# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>YISROEL GOLDSTEIN,<br><br>Defendant. | Case No. 20CR1916-BAS<br><br>INFORMATION<br><br>18 U.S.C. § 371 – Conspiracy to Defraud the United States and Commit Wire Fraud<br><br>18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) – Criminal Forfeiture |

The United States Attorney charges, at all times material:

## Background

A.   Charitable Giving and the Chabad of Poway

1.   Defendant YISROEL GOLDSTEIN was the Director of the Chabad of Poway ("the Chabad"), a religious congregation and community organization located in Poway, California. Chabad is an Orthodox Jewish Hasidic movement that provides outreach, humanitarian aid, and educational activities around the world.

2.   Defendant established the Chabad of Poway in 1986 and served as the Director and head rabbi of the organization until 2018. Defendant also established several non-profit entities affiliated with the Chabad, including the Friendship Circle of San Diego and

Congregation Bnei Yisroel. Some of the non-profit entities Defendant established provided services to the community, but others were non-functioning shell entities that existed primarily on paper or simply as bank account holders. Defendant used bank accounts held by these entities to conceal his illegal financial transactions and avoid detection by other Chabad officials, from the IRS, and from law enforcement.

3. Public charities organized and operated for exclusively religious, charitable, education, or other approved purposes, are exempt from federal taxation pursuant to Title 26, United States Code, Section 501(c)(3). To promote charitable giving and advance the work of approved public charities, the Internal Revenue Service ("IRS") allows individuals who donate money to public charities to reduce their own taxable incomes by deducting the amounts of their donations given, and thus to reduce their personal income taxes. While this policy comes at the cost of reducing government revenue, it is designed to have the benefit of increasing charitable giving, thereby benefiting the important humanitarian, educational, religious, and other worthwhile causes that public charities serve.

4. The Chabad of Poway is a public charity registered with the IRS as a tax-exempt organization. Individuals who donate money to the Chabad may therefore reduce their own taxable incomes by deducting the amounts of their donations given, and thus reduce their personal income taxes.

5. To claim a tax deduction of $250 or more, a donor to a tax-exempt public charity must obtain and keep a written acknowledgment or receipt from the charity to document the contribution. The Chabad therefore generated donation receipt letters, typically signed by Defendant, documenting the amount of a donor's contribution and specifically noting that the donation is "tax deductible."

B.   Disaster Recovery and Emergency Relief Funds

6. The Federal Emergency Management Agency ("FEMA") is a federal agency designed to coordinate disaster recovery efforts and provide equipment and resources necessary to alleviate the impacts of an emergency. FEMA helps coordinate responses to

2

disasters that overwhelm the resources of state and local authorities, and provides assistance to those impacted before, during, and after a disaster.

7. The California Emergency Management Agency ("Cal EMA") (later renamed and now known as the California Governor's Office of Emergency Services, or "Cal OES") oversees and coordinates emergency preparedness, response, and recovery throughout California. Cal EMA and Cal OES fund programs to prepare for and defend against emergencies, and to assist with relief and recovery efforts after a disaster.

8. Both FEMA and Cal EMA provided grants, aid, and other funds to the Chabad for various programs over the years. For example, in 2010 and 2011, both FEMA and Cal EMA provided hundreds of thousands of dollars in aid in response to the October 2007 wildfires in Southern California, including funds to assist the Chabad to recover from reported damage to its facilities and replace books, furniture, kitchen supplies, and other items reportedly lost in the wildfires. In addition, in 2012, and 2017 to 2018, Cal EMA, Cal OES, and FEMA provided tens of thousands of dollars in grants to pay for security systems and other facilities upgrades for nonprofit organizations affiliated with the Chabad.

The Conspiracy

9. Beginning at least around early 2010, and continuing through October 2018, within the Southern District of California and elsewhere, Defendant YISROEL GOLDSTEIN knowingly and intentionally conspired and agreed with others to: (1) defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service in the ascertainment, computation, assessment, and collection of revenue; and (2) to commit wire fraud in violation of Title 18 United States Code, section 1343; all in violation of Title 18, United States Code, Section 371.

10. The purpose of the conspiracy was to fraudulently obtain hundreds of thousands of dollars for the co-conspirators' personal use and benefit by using false information and fabricated records to pretend to be eligible for tax deductions, emergency funds, grants or donations, and private loans.

## Manner and Means of the Conspiracy

11. To further the conspiracy, Defendant and his co-conspirators used the following manner and means, among others:

   a. Defendant would solicit and receive money or items of value from taxpayers E.A., B.B., Y.S., B.M, associates of A.A., and others, disguised as charitable or religious donations, paid to Defendant, the Chabad, or another of Defendant's entities. In return, Defendant, his office administrator J.N., and others would generate receipts on Chabad letterhead acknowledging the co-conspirators' fraudulent "generous tax deductible donation."

   b. Rather than using the purported donations for charitable purposes, Defendant would secretly funnel approximately 90% of the funds back to the purported donors, with Defendant keeping approximately 10% of the money.

   c. The purported donors would falsely claim to the IRS that 100% of their payments to the Chabad were tax-deductible charitable contributions, thereby reducing their personal income tax obligations, without disclosing Defendant's kickback of the payments.

   d. Employees of corporations with matching donation programs, including J.E. and V.R., would give money disguised as charitable donations to Defendant, the Chabad, the Friendship Circle of San Diego, or another of Defendant's entities. Using records of these payments and fraudulent receipts Defendant generated, the employees would induce their employer corporations to make matching donations in amounts equal to, or even greater than, the purported donations from the employee. But instead of using the donations for charitable purposes, Defendant would secretly funnel back the employees' funds to the purported donors, allowing the employees to evade income taxes and fraudulently inducing the employers to make unwarranted corporate matching grants—which Defendant would keep.

   e. Defendant would use Chabad bank accounts to assist others, including M.G., to avoid taxes by hiding income. M.G. earned substantial freelance income

4

through payments made directly by his clients via check. Defendant would allow M.G. to use a Chabad-affiliated bank account to secretly receive hundreds of thousands of dollars in M.G.'s income, so that M.G. could avoid reporting that income to the IRS. In return, Defendant would keep 10% of M.G.'s deposits for himself. M.G. would use his 90% share of the money for his personal benefit, without reporting any of that income to the IRS and without paying the income taxes due.

  f. Defendant, along with San Diego-based real estate agent A.A. (who operated fictitious businesses such as "Imagination Construction Company" and other non-operational and unlicensed shell companies), M.S., and others, would submit inflated or false claims, supported by fraudulent invoices, to obtain grants and other benefits from FEMA, Cal EMA, Cal OES, and private foundations. They represented that the funds were purportedly for improvements or repairs to the Chabad's facilities or Chabad programing, but instead they secretly used at least a portion of the grant funds for their personal benefit.

  g. Defendant, A.A., and others would fraudulently obtain loan proceeds from banks and mortgage lending businesses by submitting false and fraudulent information in loan applications, and would fraudulently verify the false information on behalf of one another.

  h. Defendant would falsely certify that co-conspirators and associates of A.A.'s had performed volunteer work at the Chabad or its affiliated entities, knowing that they had not completed such work, so that those individuals could fraudulently verify false claims to San Diego County courts that they had fulfilled criminal sentencing requirements by performing required community service.

12. Throughout the conspiracy, Defendant worked with at least eighteen or more taxpayers to assist them in fraudulently lowering their tax liabilities. Defendant accepted fraudulent donations totaling at least $6.2 million, resulting in tax losses to the IRS of at least $1.5 million. In addition, the other fraudulent schemes that were part of the conspiracy resulted in loss to public grant programs and private foundations of at least $550,000.

5

13. In furtherance of the conspiracy, between 2010 and 2018 GOLDSTEIN and his co-conspirators took hundreds of overt acts, including the following:

   a. On or about December 29, 2017, Defendant made two deposits totaling approximately $1,160,000 in fraudulent donations to the Chabad from co-conspirator and Chabad member E.A. Although Defendant planned to secretly return most of the money to E.A., he nevertheless provided a fraudulent donation receipt letter, which Defendant intended would be used to fraudulently reduce E.A.'s tax liability for 2017.

   b. On or about January 10, 2018, at E.A.'s request and to conceal and disguise the source of this large fraudulent "donation," Defendant secretly funneled E.A.'s funds back to E.A. by purchasing approximately 246 Suisse Fortuna 1-ounce rectangular gold ingots, 246 Canadian Maple Leaf 1-ounce coins, and 246 American Eagle 1-ounce coins (worth a total of approximately $1 million) and delivering the gold to E.A. Defendant kept approximately $160,000.

14. In May 2018, Defendant arranged to accept a fraudulent $50,000 donation from "Individual A," with the intent of assisting Individual A to fraudulently lower his tax liability, in exchange for a large fee. In June 2018, Defendant accepted an additional $50,000 cash from Individual A representing what Defendant believed were proceeds of insurance fraud and provided 31 gold coins in exchange for the cash proceeds, again in exchange for a large fee. In August 2018, Defendant offered to launder an additional $900,000 cash for Individual A by purchasing real estate, in exchange for a 20% fee.

15. On around October 17, 2018, Defendant learned that he was under federal investigation when agents with the IRS and the Federal Bureau of Investigation executed search warrants at his home and residence. On that date, agents alerted Defendant that they had been investigating his tax evasion and other fraudulent activity for quite some time (indeed, the investigation relating to Goldstein's tax fraud began as early as November 2016). Agents also informed Defendant that Individual A was in fact a federal law enforcement officer working undercover.

16. After learning he was under investigation, Defendant took steps to warn certain of his co-conspirators of the investigation, which allowed his co-conspirators to take steps to conceal their tax evasion scheme.

All in violation of Title 18, United States Code, Section 371.

## Forfeiture Allegation

17. Upon conviction of the offense alleged in this Information and pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Rule 32.2, Federal Rules of Criminal Procedure, defendant YISROEL GOLDSTEIN shall forfeit to the United States any property, real or personal, which constitutes or was derived from proceeds traceable to such violation.

18. If any of the above-described forfeited property, as a result of any act or omission of GOLDSTEIN, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), made applicable herein by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described above subject to forfeiture.

ROBERT S. BREWER, JR.
United States Attorney

DATED: July 6, 2020

_____
EMILY W. ALLEN
OLEKSANDRA JOHNSON
ANDREW P. YOUNG
Assistant U.S. Attorneys