RANDY S. GROSSMAN
United States Attorney
VALERIE H. CHU
California Bar No. 241709
MICHELLE WASSERMAN
California Bar No. 254686
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone:(619) 546-8431

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 20CR1916-BAS |
|---|---|---|
| v. | ) ) ) | **UNITED STATES' SENTENCING MEMORANDUM** |
| YISROEL GOLDSTEIN, | ) ) | Date: January 4, 2022 |
| Defendant. | ) ) ) | |

**I**

**INTRODUCTION**

Rabbi Yisroel Goldstein engaged in a series of schemes over many years that defrauded United States taxpayers, three Fortune 500 companies, the California Office of Emergency Services, and the Clarence Brooks Foundation, among others. There is no question his conduct was willful and serious, particularly given his status as a Rabbi for Chabad of Poway and as a community leader within the larger San Diego Jewish community. On the other hand, Rabbi Goldstein was the victim of a terrible anti-Semitic hate crime targeting his synagogue, his community, and his faith. He lost one of his fingers and has suffered lasting symptoms of PTSD. In light of the extraordinary circumstances of this case and this defendant, the United States is requesting a significant

departure from the Guidelines. The United States recommends a sentence of **8 months' home detention, as a condition of 4 years' probation**.

## II
## STATEMENT OF FACTS

The facts of Rabbi Goldstein's offense are laid out in great detail in the PSR. In sum, Rabbi Goldstein engaged in a series of tax and fraud schemes over a period of many years. First and most significantly, Goldstein engaged in a "90/10" tax fraud scheme with at least 18 different donors. PSR ¶ 8. Donors gave Rabbi Goldstein a sum of money, purportedly as a donation to the Chabad or another entity controlled by Goldstein, such as the Friendship Circle. *Id.* Rabbi Goldstein would then secretly funnel back approximately 90% of those funds, provide the donor with a fraudulent donation receipt to enable the donor to falsely take the full deduction on their taxes, and keep the rest for himself. *Id.* In at least one instance, Rabbi Goldstein funneled the funds back by providing a donor with approximately $1 million in gold. *Id.* at 15.

Goldstein also engaged in a corporate matching wire fraud/tax fraud scheme involving at least three Fortune 500 companies with corporate matching programs. PSR ¶ 49. In this version of the scheme, Goldstein, and others, would solicit donors to make a contribution to a purportedly non-sectarian organization controlled by Goldstein. *Id.* Goldstein, directly or indirectly, would return the full amount of the original donation to the donor, usually in cash. *Id.* The donor would submit the purported donation to their employer, thereby inducing the company to match the "donation." *Id.* Goldstein would then create fraudulent donation receipts for these donors, many of whom took the deduction for the fraudulent donation on their taxes. *Id.* This scheme involved at least five fraudulent donors. *Id.* at ¶ 49-64.

Rabbi Goldstein additionally assisted his brother Mendel Goldstein (charged elsewhere) and Bruce Baker (charged elsewhere) in hiding income from the IRS. *Id.* at ¶ 69.

The United States has determined that the total tax loss inflicted as a result of all of Rabbi Goldstein's schemes was $1,829,366. The United States has additionally determined that as a result of Rabbi Goldstein's corporate matching scheme Company 1 was defrauded out of $64,730[1], Company 2 was defrauded out of $59,200, and Company 3 was defrauded out of $20,775.

In addition to the tax fraud and related schemes, Goldstein fraudulently obtained hundreds of thousands of dollars in relief funds and grants in conjunction with Alexander Avergoon (charged elsewhere). PSR ¶ 78. Using false or inflated claims, Goldstein and Avergoon obtained over $937,000 in grant funds, of which they misappropriated $860,537. Goldstein additionally obtained fraudulent documentation from Avergoon to allow him to apply for and obtain mortgages and a construction loan. *Id.* at 105-08. Goldstein made payments on all of these loans and there was no loss to any mortgage lender or bank as a result of this fraudulent conduct. *Id.*

Finally, Goldstein provided letters to Avergoon and others falsely claiming that Avergoon and his associates had completed volunteer hours at the Chabad, in order to allow them to comply with Court ordered criminal sentencing requirements for community service. PSR ¶ 109-110.

## III

## SENTENCING GUIDELINES

Pursuant to the plea agreement negotiated between the parties, the United States recommends the following Guidelines calculations:

1. Base Offense Level [§ 2T1.9(a)(1); §2T4.1(I)] .......................................... ..22
2. Abuse of a Position of Trust [§ 3B1.3] ................................................... +2
3. Acceptance of Responsibility [§3E1.1] ....................................................... -3

---

[1] Since Goldstein signed his plea agreement, the United States has identified two additional donors in the corporate matching scheme, who induced Company 1 to match an additional $15,000 in fraudulent donations. Of those, the United States learned that one donor did not receive cash back. The fraud/loss amount for Company 1 therefore increased by a net of $10,000.

4. Substantial Assistance [§ 5K1.1]………………………………………...-4[2]

5. Departure/Variance [§5K2.0/3553(a)]……………………………………-6

    **Total Offense Level   11**

At Offense Level 11 and criminal history category I (PSR ¶ 49), Goldstein's Guidelines range is 8-14 months.[3]

## IV

## ADDITIONAL SENTENCING FACTORS UNDER § 3553(a)

  After calculating the applicable Guidelines, the United States turns to the sentencing factors. In this case, after considering the § 3553(a) factors, and consistent with the parties' plea agreement, the United States recommends a low-end sentence of **8 months' home detention, as a condition of 4 years' probation,** to account for Defendant's personal history and the remaining goals of sentencing.

  The Guidelines calculations for the offense are significant, as they should be. Over a period of decades Rabbi Goldstein engaged in multiple fraud schemes that were extensive in their scope, duration, and dollar amounts involved. Rabbi Goldstein, who was in a position of leadership and trust, even enabled congregants and others to break the law. His conduct has no excuse.

  Here, although the PSR lays out in great detail the offense conduct, which was extremely serious, it does not lay out what occurred on April 27, 2019 at Chabad of Poway, which was also serious, and a driving factor behind the extraordinary departure and sentencing recommendation of the United States. On that date, the last day of Passover, a man armed with an assault rifle walked into Sabbath services at Chabad of Poway and started shooting. Intending to kill as many Jews as possible, the shooter tragically killed one congregant, and wounded three others, including Rabbi Goldstein. As a result of that

---

[2]  *See* Appendix.
[3]  The United States Probation Office recommended enhancements for Obstruction of Justice and Aggravated Role. The United States believes that its recommended Guidelines calculations properly capture Goldstein's conduct and does not recommend those enhancements.

shooting, Rabbi Goldstein lost one finger and suffered injuries to another. Following the shooting, Rabbi Goldstein repeatedly spoke out about the attack, and was the face of the community both locally and nationally, despite his injury and PTSD.

Given all of the factors together, the United States believes that a substantial departure/variance of six levels is appropriate to account for the extraordinary circumstances of the Chabad of Poway shooting and its aftermath. Weighing all of the sentencing factors, the United States therefore believes that a sentence of **8 months' home detention, as a condition of 4 years' probation** is appropriate.

# V

# FORFEITURE, RESTITUTION, AND FINE

## A. FORFEITURE

The Court has already entered a preliminary order of forfeiture. Dkt. 14. The United States requests that the Court enter a final order of forfeiture at sentencing.

## B. RESTITUTION

As set forth in Defendant's plea agreement, the parties agree that a restitution order is appropriate in this case. Goldstein should be ordered to pay restitution of $2,834,608 as follows:

| Victim | Amount |
| --- | --- |
| IRS | $1,829,366[4] |
| California Office of Emergency Services | $260,537[5] |
| Clarence Brooks Foundation | $600,000[6] |

---

[4] This amount is joint and several with charged donors Bruce Baker, Stuart Weinstock, Mendel Goldstein, Bijan Moossazadeh, Yousef Shemirani, Boris Shkoller, Rotem Cooper, and Igor Shtilkind. The United States is requesting that the Court issue an order of restitution in the full amount, with the understanding that Rabbi Goldstein will be credited the $992,463 already paid by his co-conspirators.

[5] This amount is joint and several with Alexander Avergoon (charged elsewhere).

[6] $300,000 of this amount is joint and several with Alexander Avergoon (charged elsewhere).

| | |
|---|---|
| Qualcomm, Inc. | $64,730[7] |
| Johnson & Johnson | $59,200 |
| Northrop Grumman | $20,775[8] |
| TOTAL | $2,834,608 |

## C. FINE

In light of the substantial restitution order, the United States does not recommend any fine be imposed.

## VI

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court impose a sentence of 8 months' home detention, 4 years' probation, and order restitution in the amount of $2,834,608.

                        RANDY S. GROSSMAN
                        United States Attorney

12/28/2021              s/ *Michelle L. Wasserman*
                        MICHELLE L. WASSERMAN
                        Assistant U.S. Attorney

---

[7] This amount is joint and several with charged donors Jason Ellis and Rotem Cooper. The United States is requesting that the Court issue an order of restitution in the full amount of $64,730 to Qualcomm, with the understanding that Rabbi Goldstein will be credited with the $45,330 already paid by his co-conspirators.

[8] This amount is joint and several with charged donor Igor Shtilkind. The United States is requesting that the Court issue an order of restitution in the full amount of $20,775 to Northrup Grumman, with the understanding that Rabbi Goldstein will be credited with the $17,500 already paid by his co-conspirator.